## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **PATRICIA FOUNTAIN PRESCOTT,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 09-23-B-W** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Supplemental Security Income ("SSI") appeal contends that the administrative law judge erred in relying on the Medical-Vocational Guidelines and improperly invoked the doctrine of *res judicata*. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential review process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from the severe impairment of borderline intellectual functioning, which did not meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 20, Subpart P (the "Listings"), Findings 2-3, Record at 20; that her allegations about the physical and mental limitations caused by her

---

[1] This action is properly brought under 42 U.S.C. § 1383(c). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 17, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

impairments were not well supported by the medical evidence and were not considered credible to the extent of establishing an inability to perform unskilled work, Finding 4, *id*.; that she had the physical residual functional capacity to work at all exertional levels, with the mental limitations of an inability to understand, remember, and carry out detailed instructions and a need to avoid constant or frequent interaction with the public, Finding 5, *id.*; that use of sections 201.7, 202.20, 203.28, and 204.00 of 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid") as a framework for decision-making leads to the conclusion that the plaintiff is capable of performing unskilled jobs at all exertional levels that exist in significant numbers in the national economy, Finding 6, *id*. at 20-21; and that the plaintiff was therefore not under a disability within the meaning of the Social Security Act at any time through the date of the decision, Finding 7, *id*. at 21.  The Appeals Council declined to review the decision, *id*. at 4-6, making it the final determination of the commissioner.  20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in

support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. The Grid

The plaintiff contends that the administrative law judge found that she is limited to "simple" work and that this limitation is inconsistent with the use of the Grid.[2]  Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 2.  The opinion does not use the word "simple" in its findings.  Record at 20-21.  The administrative law judge's finding was that the plaintiff had "only moderate mental limitations, except for an inability to understand, remember and carry out detailed instructions."  *Id*. at 20.  However, the opinion appears to rely on the report of state-agency psychologists who reviewed the plaintiff's medical information and found that she could "understand and remember simple, repetitive tasks and procedures," and that she "could remember and carry out simple tasks."  *Id*. at 15, 135, 161. This is sufficient evidence to allow reference to "simple" instructions in reviewing the applicable case law.  *See, e.g., Flagg v. Barnhart*, 2004 WL 2677208 (D. Me. Nov. 24, 2004), at *4-*5.

Despite the administrative law judge's assertion that he used the Grid only as a "framework for decision-making," Record at 21, it is clear that he relied solely on the Grid to support his decision.[3]  *Id*. at 20.  When a claimant is found to have a nonexertional impairment,

---

[2] At oral argument, counsel for the commissioner asserted that the plaintiff had not raised this argument in her statement of itemized errors and therefore could not pursue it.  I reject this contention, as the argument is clearly set forth at pages 2-4 of the Itemized Statement.

[3] In addition, if the Grid had been used as a framework, the administrative law judge, who did not consult a vocational expert in this case, Record at 186-203, was required to demonstrate ample support in the record for the proposition that the nonexertional impairment at issue only marginally reduces the relevant occupational base.  *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524-26 (1st Cir. 1989).  It might have been possible to demonstrate such a proposition in this case, but the administrative law judge made no attempt to do so, nor did the

the Grid may be used in this manner only when that impairment reduces the occupational base only marginally. *Heggarty v. Sullivan*, 947 F.2d 990, 995-96 (1st Cir. 1991); 20 C.F.R. § 416.969a(c)(2). The administrative law judge made no such finding in this case. "[A]lthough a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart*, 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

However, there is some authority suggesting that the specific limitations assigned by the administrative law judge in this case, that is, limitations to an inability to understand, remember, and carry out detailed instructions, and a need to avoid constant or frequent interaction with the public, Record at 20, considered separately, do not have more than a negligible effect on the unskilled occupational base, which was the base to which the administrative law judge referred in consulting the Grid, *id.* at 21, Grid §§ 207.27 (unskilled), 202.20 (same), 203.28 (same), & 204.00. As a general rule, the mental capabilities required to perform unskilled work are (i) "[u]nderstanding, remembering, and carrying out simple instructions[,]" (ii) "[m]aking judgments that are commensurate with the functions of unskilled work – *i.e.*, simple work-related decisions[,]" (iii) "[r]esponding appropriately to supervision, co-workers and usual work situations," and (iv) "[d]ealing with changes in a routine work setting." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2009), at 160-61. Thus, a single restriction to simple tasks and instructions would not be incompatible with resort to the Grid for a claimant limited to unskilled work. *See Nixon v. Barnhart,* 2006 WL 1554673 (D. Me. Jun. 1, 2006), at *6; *Lassor v. Astrue*, 2007 WL 2021924 (D. Me. Jul. 11, 2007), at *5;

---

commissioner at oral argument. The lack of such a demonstration, if the Grid had been used as a framework, would require remand. *Fletcher v. Astrue*, 2009 WL 214579 (D. Me. Jan. 28, 2009), at *3-*4.

*Falcon-Cartagena v. Commissioner of Soc. Sec.*, 21 Fed.Appx. 11, 14, 2001 WL 1263658 (1st Cir. Oct. 11, 2001), at \*\*2.

The plaintiff's argument to the contrary relies on four decisions from this court: *Flagg v. Barnhart*, 2004 WL 2677208 (D. Me. Nov. 24, 2004); *Hall v. Barnhart*, 2004 WL 1896969 (D. Me. Aug. 25, 2004); *Hall-Grover v. Barnhart*, 2004 WL 1529283 (D. Me. Apr. 30, 2004); *Briggs v. Astrue*, Civil No. 08-5-B-W (D.Me.).  Itemized Statement at 3.  Each of these cases is distinguishable.

In *Flagg*, the issue did not involve the application of the Grid, 2004 WL 2677208 at \*5; the same is true of *Hall*, 2004 WL 1896969 at \*2-\*3, *Hall-Grover*, 2004 WL 1529283 at \*3-\*4, and the Report and Recommended Decision (Docket No. 20) in *Briggs*, at 4-6. The plaintiff's ensuing conclusion, based upon her attorney's calculation of the ratio between the number of unskilled occupations listed in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th rev. ed. 1991) and the number of those occupations assigned a reasoning level of one, Itemized Statement at 4, fails to address the number of jobs, rather than the number of occupations, available to the plaintiff with or without the assigned restrictions, which is the issue at Step 5. It also assumes that the DOT is totally compatible with the Grid, a regulation created by an entirely separate government agency.  It is not.  *See, e.g., Meissl v. Barnhart,* 403 F.Supp.2d 981, 984 (C.D. Cal. 2005).  In addition, the plaintiff's argument ignores applicable First Circuit case law.

In *Garcia-Martinez v. Barnhart*, 111 Fed.Appx. 22, 23, 2004 WL 2240136 (1st Cir. Oct. 1, 2004), at \*\*1, the First Circuit held that a mental impairment that limited a claimant to work of a routine, repetitive nature that did not involve undue pressure or interactions with the public did not preclude use of the Grid as a framework.  *See also Ortiz v. Apfel*, 55 F.Supp.2d 96, 101-02 (D. P.R. 1999).  At first glance, this holding appears to conflict with this court's

5

recommended decision in *Conley v. Astrue*, 2009 WL 214557 (D. Me. Jan. 28, 2009), at \*2-\*3, where the limitations found by the administrative law judge were to simple, routine, repetitive tasks involving sustained attention only in two-hours blocks and no interaction with the public. In *Conley*, the administrative law judge stated that he had taken "administrative notice" of "various authoritative publications" that stated that unidentified unskilled sedentary occupations existed in significant numbers that would not be affected by these limitations. I concluded that this was inadequate support for the use of the Grid as a framework for decision-making.

In the case at hand, unlike *Conley*, the exertional occupational base is unlimited; in *Conley*, the occupational base was limited to the much smaller area of unskilled sedentary jobs. The case at hand thus begins with a virtually unlimited occupational base, a significant difference from the most limited exertional level in the commissioner's regulatory framework at issue in *Conley*. In addition, the plaintiff's limitations in this case do not include the significant further limitation to work requiring sustained attention only in two-hour blocks that was implicated in *Conley*. Therefore, I conclude that in this case resort to the Grid, although not the better alternative, was not reversible error.

## B. Res Judicata

The plaintiff has also submitted a lengthy argument based on the footnote in the administrative law judge's opinion, asserting that the administrative law judge violated her constitutional right to due process by "invok[ing] the *res judicata* doctrine [as a basis for] failing to consider whether the Plaintiff met Listings 12.05C or D." Itemized Statement at 4. The footnote in the opinion reads, in its entirety:

> The claimant protectively filed a previous application for supplemental security income on April 30, 2001, that was denied by another administrative law judge on November 25, 2003 (Exhibit in A section of the file). That decision is entitled to *res judicata* effect, and

6

establishes that the claimant was not "disabled" on or before the date of
that previous hearing decision.  20 CFR 416.1455 and .1457(c)(1).

Record at 12 n.1.  The opinion also notes: "An individual cannot be paid SSI benefits prior to

filing an application therefor (20 CFR 416.330 and 416.335), however, so in this case it is

unnecessary to consider whether the claimant was 'disabled' prior to February 2005[,]" *id*. at 13,

when the current application was filed, *id*. at 12.

The plaintiff's argument, Itemized Statement at 5, focuses on the following passage from

the opinion:

> In counsel's post-hearing letter . . . , he noted Dr. Rines' opinion that the
> claimant meets Section 12.04 of the Listings, and counsel also asserted
> that the claimant meets Section 12.05C of the Listings, based on a
> September 2001 consultative psychological evaluation that was
> contained in the medical record before the previous administrative law
> judge.  Testing at that time apparently disclosed a verbal IQ of 72, a
> performance IQ of 72, and a full scale IQ score of 69.  Counsel's
> arguments on this point are rejected for several reasons.  First, the prior
> decision in November 2003 . . . that found the claimant was not disabled
> included a finding that she had no impairment(s) that met the Listings,
> and a conclusion that her mental impairment did <u>not</u> meet Section 12.05.
> That decision, and its internal findings and conclusions, are final and
> binding on the claimant under the doctrine of <u>res judicata</u>, and cannot be
> collaterally attacked at this time.  20 CFR 416.1455 and .1457(c)(1).
> There is no medical evidence in the current record reflecting any IQ
> scores, and even the 2001 scores did not establish that the claimant was
> "mentally retarded" before age 22, as required by the Listings.  Her
> <u>possible</u> attendance in "some" special education classes in middle school
> or high school, or even attendance in "slow learner" classes, does not
> demonstrate mental retardation.  Moreover, as the previous ALJ noted,
> that 2001 psychological evaluation also revealed that the claimant had
> strengths in other areas of mental functioning that contradicted a
> conclusion that she was functioning in the mental retardation range.  In
> addition, Section 12.05C of the Listings requires, in addition to a valid
> IQ score of 60 through 70, that the individual also have "a physical or
> other mental impairment imposing an additional and significant work-
> related limitation of function."  There is no medical evidence in the
> current record demonstrating that the claimant has any severe physical
> impairment (which also was the conclusion of the prior ALJ), and until
> Dr. Rines's report (discussed further, below), there is no evidence in the
> current record that the claimant has had any severe mental impairment

> other than borderline intellectual functioning (and even Dr. Rines did not
> opine that the claimant is functioning in the mentally retarded range).
> Thus, through the time of the current hearing, the claimant clearly has
> failed to show that her impairments satisfy Section 12.05 of the Listings.

Record at 16-17. The administrative law judge goes on to explain carefully why he "gives very little weight to the opinions from Dr. Rines that the claimant is unable to work and her depression meets Section 12.04 of the Listings." *Id*. at 17-18.

The plaintiff contends that the administrative law judge violated her constitutional right to due process by failing to include the record from her first application for benefits in the record of this application,[4] despite the fact that he refers to those records, as did her attorney and two of the state-agency reviewers, and by failing to give her notice "that *res judicata* would be applied to her Title XVI claim." Itemized Statement at 6-7. She does not indicate when she should have been given such notice, why the fact that hers is a Title XVI claim is important in this regard, or what she could or would have done differently if the notice had been given in the manner she deems consistent with constitutional requirements. Indeed, the record makes it clear that her attorneys at all relevant times had a copy of the document at issue, the administrative law judge's opinion denying the first application, Record at 109-10, making it difficult to discern any possible constitutional violation.

In any event, it is not necessary to reach the constitutional issue because the reasons given by the administrative law judge for rejecting any claim that the plaintiff met Listing 12.05C are sufficient without any mention of the records from the earlier claim, and those

---

[4] The plaintiff cites case law and a section of the Social Security Administration's Program Operations Manual System concerning the consequences when the agency has lost a previous claim file. It is clear that the plaintiff's lawyer had at least the opinion denying the earlier application, Record at 109, and two state-agency reviewers saw the report of the psychological evaluation from that application, *id*. at 149. What is not clear is that the defendant necessarily has "lost" its claim file for that case. In addition, there is no indication in the file that the plaintiff took any appeal from the denial of her first application or that she asked that it be reopened in connection with the current application. At oral argument, the attorney for the plaintiff disclaimed any reliance on an assertion that the commissioner had lost the earlier file, that she had appealed from the first denial, or that she sought to reopen her first application.

reasons are equally applicable to Listing 12.05D: there is no evidence of onset before age 22 (1987), Record at 22, Listing 12.05; there is no evidence of a physical or other impairment imposing an additional and significant work-related limitation of function, Listing 12.05C, a conclusion that is not challenged by the plaintiff; and there is evidence in the current record that there are only mild restrictions of activities of daily living, Record at 147, 173; mild difficulties in maintaining social functioning, *id.*; moderate difficulties in maintaining concentration, persistence, or pace, *id.*; and no evidence of repeated episodes of decompensation, each of extended duration, *id.* One of these four factors must be met to meet section 12.05D of the Listings.

For these reasons, the plaintiff is not entitled to remand on the basis of her second issue on appeal.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of September, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge